991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roy Stanley LONGFELLOW, Defendant-Appellant.
 No. 92-1930.
 United States Court of Appeals, Sixth Circuit.
 April 20, 1993.
 
 Before NELSON and BATCHELDER, Circuit Judges, and BECKWITH, District Judge.[1]
 PER CURIAM.
 
 
 1
 Defendant Roy Stanley Longfellow here appeals a sentence imposed after he pleaded guilty to an indictment charging him with various federal motor vehicles offenses. Concluding that Mr. Longfellow was "involved in an organized scheme to receive stolen vehicles or vehicle parts," the district court increased his offense level to 14 under U.S.S.G. §§ 2B1.2(b)(5) and 2B6.1(b)(3). The sentence reflects this increase, and the issue on appeal is whether the increase was justified. We conclude that it was, and we shall affirm the sentence.
 
 
 2
 * Count one of the indictment charged Mr. Longfellow with violating 18 U.S.C. § 2321 by possessing a motor vehicle with intent to sell it, knowing that its Vehicle Identification Number (VIN) had been altered. Count two charged a violation of 18 U.S.C. § 511 by obliterating and altering a VIN. Count three charged that Mr. Longfellow had violated 18 U.S.C. § 2313 by possessing a stolen motor vehicle.
 
 
 3
 On May 18, 1992, the day his trial was scheduled to begin, Mr. Longfellow pleaded guilty to all three counts of the indictment. Mr. Longfellow admitted that he had possessed a stolen 1985 Chevrolet pickup and that he had sold it to a man named Swan after altering the identification number. Defendant Longfellow had obtained this vehicle from a man named Phillip Hawk in Oklahoma. The defendant also had purchased a 1982 truck with a stolen engine from Mr. Hawk. Mr. Longfellow stated further that he had purchased a stolen 1988 Chevrolet pickup truck from a friend of Mr. Hawk in Oklahoma. The government informed the district court at sentencing that it had evidence that Mr. Longfellow had been searching for a VIN plate for yet another stolen vehicle he was soon to receive from Oklahoma. The defendant did not contest this representation and did not require that the government's evidence be produced.
 
 
 4
 The probation officer who prepared Mr. Longfellow's presentence report recommended that the offense level assigned under the sentencing guidelines be increased to 14 under U.S.S.G. §§ 2B1.2(b)(5) and 2B6.1(b)(3).[2] Longfellow's counsel objected to such an increase. The district court resolved the issue against the defendant:
 
 
 5
 "Now, I think Mr. VerHey [Assistant U.S. Attorney] pointed out correctly Paragraphs 11 and 12 [of the presentence report] where three Chevy trucks were discussed as a factual predicate for 14, 15 and 16 where the investigation by the State Police, Michigan State Police, by the Federal Bureau of Investigation, and by other agencies identify a close relationship with an individual who was the supplier of stolen pickup trucks, three, possibly four in issue here, and a scheme whereby certain repairs would be conducted relative to these vehicles before they were altered and then resold to other purchasers, and it seems to this Court that it's there.
 
 
 6
 Now, there is a qualitative issue here, and I think maybe that's what bothers [defense counsel] somewhat and it bothers me a little bit, too, is this particular topic of an organized scheme to steal vehicles or vehicle parts. This 2B6.1(b)(3), does this catch or does this have within its purview an individual such as the Defendant who has basically a discussion of basically a handful of vehicles, three, four vehicles, or does this talk about the chop shop, as they're called, where multiple vehicles come in and where hundreds of vehicles are torn apart and motors and bodies sold and whatever else? We all read about them and every so often we find someone before us in that situation, and it clearly falls within subset 3, clearly falls within.... The emphasis on this particular section should be on the words 'organized scheme.' That is, if it's an innocent purchase of a vehicle or possibly two vehicles randomly seen coming into the person's custody, one cannot call it organized. But where we find, as in this case, they all came from one state, and they all allegedly came from one individual, and their purpose in being with Mr. Longfellow was a specific purpose; i.e., he would alter them in some way, repair them in some way and/or use them for his own use or intend to resell them on, was that an organized scheme?
 
 
 7
 'Scheme' maybe is a strong word to use here, but there was some organizational path here. They came from Oklahoma, they were stolen. The consideration paid for them was considerably less than market value, considerably less, $6,000 here for I believe it was a Silverado four-door four-wheel-drive pickup, which I can take judicial notice of the fact is way, way below retail value. Does this amount to a scheme? I think it does. I think it does. Not the most egregious, certainly, scheme or plan, but it certainly does come down to a scheme or plan, an organized scheme."
 
 
 8
 The court increased Mr. Longfellow's offense level to 14 and then reduced it by two levels for acceptance of responsibility. Longfellow was in Criminal History Category I, and the sentencing range specified for these variables in the Sentencing Table was imprisonment for 10-16 months. The court imposed a sentence of 12 months. The maximum sentence prescribed by statute would have been 10 years on Count 1 and five years on each of the other two counts.
 
 II
 
 9
 The facts in this case are undisputed, and the district court's application of the sentencing guidelines to the facts is entitled to due deference. 18 U.S.S.G. § 3742(e); United States v. Riley, No. 92-5201 (6th Cir.1993), 1993 WL 24160 1993 U.S.App. LEXIS 2122, (6th Cir. Feb. 3, 1993).
 
 
 10
 In United States v. Walker, 931 F.2d 631 (10th Cir.1991), the Court of Appeals for the Tenth Circuit vacated the sentence of a defendant who had been convicted on two counts of altering VINs and one count of conspiring to receive, possess, and dispose of a stolen motor vehicle. The defendant had removed VINs from vehicles and placed them on other vehicles to create the impression that those vehicles were newer. Because the removal of VINs did not further or conceal the receipt or sale of stolen motor vehicles or stolen motor vehicle parts, the court concluded that the trial court should not have applied § 2B6.1(b)(3). Id. at 636.
 
 
 11
 Unlike the defendant in Walker, Mr. Longfellow altered VINs in connection with his receipt of stolen vehicles and parts. The 1985 truck, which the defendant altered and sold to another individual, was a stolen vehicle. Mr. Longfellow obtained his vehicles and parts from or through Mr. Hawk, an individual whom he had reason to believe was a trafficker in stolen vehicles and parts. In addition, the government was prepared to present evidence that Mr. Longfellow had been looking for another VIN tag to use in connection with another stolen vehicle from Oklahoma.
 
 
 12
 Mr. Longfellow obtained stolen vehicles or stolen vehicle parts from Oklahoma on at least three separate occasions. In concluding that Mr. Longfellow was involved in an organized scheme, the district court found that he was not an innocent one-time recipient of stolen goods. Giving the court's conclusion the deference due it, we cannot say that error occurred here.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation
 2 U.S.S.G. § 2B1.2(b)(5) provides as follows in connection with receiving, transporting, transferring, transmitting, or possessing stolen property: "If the offense involved an organized scheme to receive stolen vehicles or vehicle parts, and the offense level as determined above is less than level 14, increase to level 14."
 Section 2B6.1(b)(3) provides as follows in connection with altering or removing VINs or trafficking in motor vehicles or parts with altered or obliterated identification numbers: "If the offense involved an organized scheme to steal vehicles or vehicle parts, or to receive stolen vehicles or vehicle parts, and the offense level as determined above is less than level 14, increase to level 14." Application note 1 says, in pertinent part:
 "Subsection (b)(3), referring to an 'organized scheme to steal vehicles or vehicle parts, or to receive stolen vehicles or vehicle parts,' provides an alternative minimum measure of loss in the case of an ongoing, sophisticated operation such as an auto theft ring or 'chop shop.' "